UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| THERESA A. WALKER, | No. CV 09-06738-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred in

1           failing to find that Plaintiff's headaches were a severe
2           impairment; and
3      2.   Whether the ALJ failed to include all of the mental
4           limitations assessed by the consultative examiner in his
5           residual functional capacity.
6  (JS at 5.)

8      This Memorandum Opinion will constitute the Court's findings of
9  fact and conclusions of law.  After reviewing the matter, the Court
10 concludes that for the reasons set forth, the decision of the
11 Commissioner must be reversed.

                                    I

       **THE ALJ ERRED AT STEP TWO IN FAILING TO FIND**

       **THAT PLAINTIFF'S HEADACHES CONSTITUTE A SEVERE IMPAIRMENT**

       Plaintiff's case has been working its way through the Social Security Administration ("SSA") for over six years.  Plaintiff's initial application for disability insurance benefits ("DIB") was filed on April 2, 2003. (AR 188-90.)  After being denied at the administrative level, she filed a Request for Hearing, and had a hearing before an ALJ on March 15, 2004. (AR 36-72.)  She received an unfavorable decision several months later. (AR 120.)  Her Request for Review with the Appeals Council was granted on November 19, 2004. (AR 160.)

       It took almost two years for Plaintiff to have a second hearing, which occurred on May 8, 2006 before the same ALJ.  Due to the Order of the Appeals Council remanding the matter, which required development of the record concerning her treating physician, Dr.

                                    2

Kurtz, the ALJ diligently continued the hearing several times in order to attempt to obtain records from Dr. Kurtz, which was ultimately unsuccessful. The hearing finally proceeded on June 4, 2007, at which time Plaintiff appeared with counsel, and testimony was taken both from Plaintiff and from a vocational expert ("VE"). (AR 89-115.) Again, an adverse decision resulted, issued by the ALJ on June 21, 2007. (AR 22-29.) This time, Plaintiff's Request for Review by the Appeals Council was denied, resulting in the filing of this case.

Plaintiff's first ground for error is that the ALJ erred in failing to find that her headaches constituted a severe impairment. In evaluating this claim, the Court will not discuss in any detail the five-step sequential evaluation process, which is well known. In brief, however, a claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has established a five-step sequential evaluation process which the ALJ must follow. 20 C.F.R. §§404.1520, 416.920. What is concerned here is the second step in that process, in which the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. If not, a finding of non-disability is made and the claim is denied. 20 C.F.R. §§404.1520(c),

3

416.920(c).

A severe impairment or combination of impairments is one which significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §416.920. Basic work activities relate to the aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §416.921; Bowen v. Yuckert, 482 U.S. 137, 141-42 (1987).

Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. Id. at 146. "The severity requirement increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Id. at 153.

Pursuant to Social Security Ruling 85-28,

> "An impairment or combination of impairments is found 'non-severe' and a finding of 'not disabled' is made at this Step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic

4

work activities)."

In this case, the ALJ found, as he had in the first decision, that Plaintiff's headaches (which are diagnosed as occipital neuralgia, see infra), did not constitute a severe impairment. (AR 24.)  The ALJ's decision appears to be based on a mixed negative credibility assessment, and his analysis that the objective evidence does not support a finding of severe impairment.  With regard to credibility, the ALJ cited a level of activities of daily living ("ADL") which he believed belied Plaintiff's subjective pain descriptions (see, infra).  Also, the ALJ felt that Plaintiff's treatment history contraindicated a finding of severe impairment, because of Plaintiff's testimony that at one point she had been taking the same headache medication for two years without relief, which the ALJ found to be "quite peculiar ... if they were not helping her." (AR 24.)  The ALJ also noted that Plaintiff has never been asked to keep a diary of foods that she eats or to chart the environments where she was most prone to have headaches, concluding, in a medical fashion, that these were "all factors that could elicit information about the trigger for, and best treatment for, the alleged symptoms." (AR 24.) As the Court will more fully discuss in the body of this Opinion, this can only be interpreted as a medical opinion and conclusion, and one which, despite the very extensive record in this case, is not substantiated by any medical evidence whatsoever.  In any event, the ALJ also cited on several occasions in his decision the fact that Plaintiff walked out of an appointment with a consultative neurologist, Dr. Chow. (See AR at 24, 25, 541-55.)

As the Commissioner argues in support of affirmance of the

1  decision, the ALJ rejected Dr. Kurtz's opinion because he believed it
2  was based in substantial part on Plaintiff's subjective statements
3  rather than objective evidence. (See AR at 25, JS at 11.)  But this
4  conclusion is simply not supported by the record.  In 2005, Plaintiff
5  was treated on several occasions between January and July by Dr.
6  Singh. (AR 358-76.)  On each occasion, Dr. Singh assessed that
7  Plaintiff suffered from occipital neuralgia, a headache that is
8  characterized by piercing, throbbing, or electric-shock-like chronic
9  pain in the upper neck, back of the head, and behind the ears. (See JS
10 at 6.)  During four visits Plaintiff had with Dr. Singh, he changed
11 her medications several times to address her pain, and discussed the
12 risks of a nerve block with her.  None of this would appear to be an
13 opinion based on subjective self-reporting by Plaintiff.
14      In the previous year, 2004, Plaintiff had received a nerve block
15 from Dr. Vahedifar. (AR 335-36, 596-97.)  The nerve block resulted in
16 an immediate decrease in Plaintiff's pain, but on the same night, she
17 had an adverse reaction, suffering severe pain which sent her to the
18 ER. (See Plaintiff's testimony at AR 57.)  Moreover, Dr. Vahedifar's
19 diagnosis that Plaintiff suffered from occipital neuralgia (see AR at
20 600) was clearly based on his own objective opinion based upon
21 examination, not simply a regurgitation of Plaintiff's complaints.  In
22 2004, Plaintiff told Dr. Vahedifar that "she is having so much nausea
23 and vomiting with her medication and she cannot tolerate any of the
24 medications." (AR 583.)  What actually strains credibility would be
25 that a person, not suffering from severe headache pain, would subject

herself to a wide variety of powerful medications[1] and submit to a risky nerve block.

Thus, it is well established that Plaintiff suffers from occipital neuralgia. The question, then, is whether this is a severe impairment as defined by the regulations and cases the Court has cited. Again, it must be kept in mind that the medical evidence must only establish "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work ..." (See SSR 85-28.)

Certainly, Plaintiff has consistently reported severe headache-related pain to a wide variety of treating and examining physicians, starting in 2001. At her first hearing, where she was not represented by counsel, she testified that in the summer of 2000, she stopped doing her work activities because of headache pains. (AR 55.) She described the various medications that her treating physician prescribed for her, noting that they did not work very well. She described that most of the day she spends laying down and when she is not in pain she tries to do what is feasible for her. (AR 61.) She does not do much cooking or grocery shopping and only a little housecleaning. (AR 62-63.) She has taken trips, once to go to the East Coast for her mother's funeral, once to Texas and for a few days to Northern California. (AR 63.) But she described that her pain headaches begin without any warning and require her to lay down. (AR 64.) It happens sometimes when she is driving a car, which is why she

---

[1] As Plaintiff's counsel notes, over the years, she has attempted to manage her pain with Imetrex, Neurontin, Zoloft, Butalbital, Fioricet, Fentanyl patches, Demoral, Norco, MS Cotin, OxyCotin, Soma, antidepressants, anti-inflamatories, Dilaudid, and an anesthetic steroid injection directly into her occipital nerve. (AR 408, 583, 585, 593, 602, 609.)

1  now only drives in the immediate vicinity of her home on back roads.
2  (Id.)
3      At Plaintiff's second hearing in 2007, before the same ALJ, she
4  reiterated examples and descriptions of her pain testimony.  The ALJ
5  was not terribly interested in hearing about this (AR 98-99), but
6  Plaintiff was able to describe, again, the unpredictable and severe
7  pain which comes on from her headaches. (AR 99.)  She described how
8  she sees orthopedic and pain management specialists, and that one of
9  her physicians, Dr. Singh, is now trying novocaine shots in the back
10 of her neck. (AR 100.)
11     The ALJ depreciated, or more likely discarded, Plaintiff's pain
12 complaints, because, as noted, he did not even find that it was a
13 severe impairment.  To accomplish this, he relied in part upon a
14 negative credibility assessment of Plaintiff's pain reports.  But the
15 Court finds that the factual bases cited by the ALJ in the decision
16 are largely not supported by the record itself.  For example, the ALJ
17 commented that Plaintiff had been taking the same headache medications
18 for two years without relief, and found that to be peculiar if she was
19 in fact in such great pain.  This conclusion, however, literally
20 ignores the bulk of the evidence, which shows that Plaintiff has gone
21 to numerous specialists in orthopedics, pain management, and
22 neurologic functioning, in an attempt to alleviate her pain.  She has
23 submitted to a wide variety of powerful medications and invasive
24 procedures, such as nerve blocks.  The ALJ also noted that Plaintiff
25 has never kept a diary of foods she eats, or charted the environment
26 where she was most prone to have headaches. (See AR at 24.)  These
27 comments are mystifying, since there is absolutely nothing in the
28 record which, on a medical basis, would establish that Plaintiff's

occipital neuralgia is related to the foods she eats, or her physical environment.  In making such statements, the ALJ was drifting into an area of medical expertise which he does not have.  In any event, as a credibility analysis, this assessment falls short, for the reasons stated.  Finally, the ALJ did focus several times in his decision on the fact that Plaintiff walked out of a meeting with a neurologist, Dr. Chow. The ALJ took this as reflective of Plaintiff's resistance to trying different treatments.  But, as the Court has noted, this is exactly what Plaintiff has done: tried various powerful medications and invasive treatments in an attempt to alleviate her pain.  While it was surprising to Dr. Chow, and perhaps not prudent for Plaintiff, to walk out of this meeting, the Court notes that it was not an examination which was funded by the Commissioner, or by any state agency.  Plaintiff was sent to Dr. Chow by Dr. Kurtz, her regular physician.  She was never really asked during either hearing why she walked out of the meeting with Dr. Chow, but there are indications in the record that Plaintiff has a great deal of anxiety related to her condition.  To make a negative credibility assessment against Plaintiff on this basis without giving her a chance to explain seems to the Court to be unfair.

Thus, the Court rejects the ALJ's credibility assessment as a basis for finding that she does not suffer severe pain from her headache condition, and therefore, the only conclusion to be reached is that the ALJ erred in rejecting Plaintiff's occipital neuralgia at Step Two as being a severe impairment.  This is certainly not a case in which Plaintiff has failed to establish the minimal screening requirements necessary for a Step Two finding.  Furthermore, the ALJ's rejection of this preliminary finding, and the basis upon which he

arrived at it, both in his first and second decision, lead the Court to question the ALJ's impartiality in this particular case.  At the second hearing, the ALJ seemed somewhat impatient with Plaintiff when she would attempt to explain something.  The Appeals Council gave a clear directive to the ALJ to reconsider the evidence that Plaintiff suffered from a severe physical impairment, but in the second go-round, the ALJ's interpretation of the evidence was unaffected.  For this reason, and because of the fact that this matter has gone on for over six years, Plaintiff's case will be assigned to a new ALJ on remand.  The physical impairment of occipital neuralgia will, on remand, be found to be a severe impairment.  Plaintiff's pain complaints will be found to be credible.

The Court will briefly address Plaintiff's second issue, which asserts that the ALJ failed to include all of Plaintiff's mental limitations as assessed by the consultative examiner ("CE").

On January 26, 2007, at the request of the Department of Social Services, Plaintiff received a psychological evaluation from Dr. Brawer. (AR 564-73.)

In the ALJ's decision, it would appear that the he generally accepted and adopted Dr. Brawer's analyses and conclusions with regard to certain mental functional limitations.  Plaintiff's counsel believes that the ALJ failed to accept Dr. Brawer's conclusion that Plaintiff has moderate limitations in the ability to respond to work pressures in a usual work setting and to respond appropriately to changes in the workplace. (JS at 17, citing AR 572.)  It is not clear from the decision (see AR at 27) that the ALJ specifically rejected these conclusions, other than his statement that he generally adopted Dr. Brawer's analyses.  For clarity, on remand, these limitations

should be adopted and factored into the ALJ's decision. The Court is, however, more concerned with the ALJ's specific rejection of Dr. Brawer's conclusion that Plaintiff may have problems with sustaining motivation and stamina due to her physical condition. The ALJ in fact rejected this portion of Dr. Brawer's opinion because of his conclusion that Plaintiff does not suffer from a severe physical impairment. The Court has overruled that finding, and it will be established on remand. Consequently, to the extent that the ALJ's rejection of this portion of Dr. Brawer's opinion was based upon his rejection of the existence of Plaintiff's physical impairment, it cannot be sustained.

Based on the foregoing, this matter will be remanded for a new hearing, in accordance with the dictates of this Opinion.

**IT IS SO ORDERED.**


DATED: October 5, 2010              /s/
                            VICTOR B. KENTON
                            UNITED STATES MAGISTRATE JUDGE